J-S04045-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KENNETH WEINSTEIN, ADMINISTRATOR OF THE ESTATE OF RICHARD A. ARBACH, DECEASED, AND KAREN BARATS, EXECUTRIX | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| WILLIAM J. STACEY, WILLIAM R. STACEY, AND THOMAS STACEY | : : : : : : | No. 1222 EDA 2023 |
| APPEAL OF: THOMAS STACEY, ADMINISTRATOR OF THE ESTATE OF WILLIAM J. STACEY, DECEASED | : : : | |

Appeal from the Judgment Entered June 22, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  210201107

BEFORE:  BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED APRIL 23, 2024**

The Estate of William J. Stacey, deceased ("Estate of William J. Stacey"),

appeals from the judgment entered in this quiet title action.[1]  We affirm on

the basis set forth in the comprehensive trial court opinion.

---

[1] The Estate of William J. Stacey purported to appeal from the April 21, 2023 order denying his motion for post-trial relief; however, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions. ***See generally Johnston the Florist, Inc. v. TEDCO Constr. Corp.***, 657 A.2d 511 (Pa. Super. 1995) (*en banc*).  Although the Estate's notice of appeal was filed prematurely in the instant matter, judgment was subsequently entered on June 22, 2023.  A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction.  ***See Drum v. Shaull Equipment and Supply Co.***, 787 A.2d 1050 (Pa. Super. 2001); ***see also*** Pa.R.A.P. 905(a)(5) (stating that a notice of appeal filed after a court's
*(Footnote Continued Next Page)*

The trial court provided a detailed summary of the relevant factual and procedural history of this case, which we adopt as though fully set forth herein. *See* Trial Court Opinion, 8/7/23, at 1-5. We note briefly that, in 1992, Richard H. Arbach ("Richard H.") and his son, Richard A. Arbach ("Richard A.") who each owned several properties, became the owners as tenants in common of real property located at 2604 Collins Street in Philadelphia ("the property"). William J. Stacey ("William"), who was employed by the Arbachs to perform renovations on their various properties, resided at the property from 1993 until his death in 2020, and while living there made improvements thereto. Richard A. died in 1997, and Richard H. died in 2002. In 2019, more than a decade after the father and son had died, William recorded a fraudulent deed, purportedly signed by Richard A. and Richard H., transferring title to the property from them to himself.

The Estate of Richard A. Arbach and the Estate of Richard H. Arbach brought this quiet title action against the Estate of William J. Stacey to determine ownership of the property.[2] The Estate of William J. Stacey filed a counterclaim raising the affirmative defense of adverse possession based on William's open and exclusive occupation of the property from 1993 until his

---

determination but before the entry of an appealable order/judgment shall be treated as if it was filed after the entry of the appealable order/judgment and on the date of entry). Hence, no jurisdictional defects impede our review.

[2] *See* Pa.R.C.P. 1061(b)(2), (3) (permitting an action in quiet title to, *inter alia*, determine the validity of any deed affecting any title or interest in land, or to compel an adverse party to admit the invalidity of a deed affecting any title or interest in land).

death in 2020. In response, the Estate of Richard H. Arbach filed an answer asserting, *inter alia*, the affirmative defense of unclean hands based on William's recording of the fraudulent deed.

The matter proceeded to a non-jury trial at which the Estate of William J. Stacey presented testimony that William purchased the property from Richard A. for $1,000 in 1993 and thereafter made significant improvements to the property, including repairs to the roof, kitchen, basement, windows, heat, plumbing, and electric. The parties agreed that the deed recorded by William in 2019 was fraudulent and should be stricken. At the conclusion of trial, the court determined that Richard A. had sold his undivided one-half interest in the property to William in 1993, and that William thereafter made significant improvements to the property. With respect to the remaining undivided one-half interest in the property owned by Richard H., the trial court determined that William was not entitled to claim ownership of that percentage through adverse possession based on his unclean hands due to his recording of the fraudulent deed.

Accordingly, on June 22, 2023, the trial court entered judgment in favor of both Estates, finding that the Estate of William J. Stacey and the Estate of Richard H. Arbach each owned an undivided one-half interest in the property as tenants in common. Thereafter, the Estate of William J. Stacey filed a timely post-trial motion, which the trial court denied. The Estate of William J.

Stacey then filed a timely notice of appeal, and both the Estate and the trial court complied with Pa.R.A.P. 1925(b).[3]

The Estate of William J. Stacey raises the following issue for our review:

Did the trial court commit an error of law/abuse of discretion in holding that [the Estate of William J. Stacey]'s title in the entire property by adverse possession was barred by the equitable doctrine of unclean hands, where the undisputed evidence established an ouster of the co-tenant, and also established that title to the co-tenant's undivided one-half interest in the property had fully vested in [the Estate of William J. Stacey] by way of adverse possession before the act/conduct the trial court found constituted unclean hands and therefore [the Estate of Richard H. Arbach] suffered no prejudice or harm?

Estate of William J. Stacey's Brief at 2.

In reviewing an equitable decision entered in an action to quiet title, an appellate court's review is limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion. **See Regions Mortgage, Inc. v. Muthler**, 889 A.2d 39, 41 (Pa. 2005); **see also Calisto v. Rodgers**, 271 A.3d 877, 881 (Pa. Super. 2022) (*en banc*) (explaining that, although of statutory origins, a suit to quiet title is actually an equitable proceeding).

As this Court has explained:

We will reverse only where the trial court was palpably erroneous, misapplied the law, or committed a manifest abuse of discretion. Where there are any apparently reasonable grounds for the trial

---

[3] The Estate of Richard H. Arbach is not a party to this appeal.

court's decision, we must affirm it. Moreover, the function of this Court on an appeal from an adjudication in equity is not to substitute our view for that of the lower tribunal; [we are] to determine whether a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal . . . when reviewing the results of a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence.

*Nebesho v. Brown*, 846 A.2d 721, 725-26 (Pa. Super. 2004) (citations and some punctuation omitted).

Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. *See Rec. Land Corp. v. Hartzfeld*, 947 A.2d 771, 774 (Pa. Super. 2008). Claimants seeking to assert title by adverse possession must establish actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. *See Gruca v. Clearbrook Cmty. Servs. Ass'n*, 286 A.3d 1273, 1278 (Pa. Super. 2022).

The doctrine of unclean hands closes the doors of a court of equity to one tainted with iniquity or bad faith relative to the matter in which he seeks relief. *See Lucey v. W.C.A.B. (Vy-Cal Plastics PMA Grp.)*, 32 A.2d 1201, 1204-05 (Pa. 1999) (explaining that while equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue). Application of the doctrine of unclean hands is within the trial court's discretion. *See Stauffer v. Stauffer*, 351 A.2d 236, 245 (Pa. 1976).

After our independent review of the record, the Estate of William J. Stacey's brief, the applicable law, and the well-reasoned and thorough opinion of the Honorable Carmella Jacquinto, we conclude the Estate of William J. Stacey's issue merits no relief. The trial court comprehensively explained its determination that William's recording of the fraudulent deed to the property rendered him ineligible to obtain full legal title to that property through adverse possession. *See* Trial Court Opinion, 8/7/23, at 5-13 (finding that the uncontroverted evidence presented at trial established that [the Estate of William J. Stacey] is barred from receiving title to the [entire] [p]roperty via adverse possession due to the doctrine of unclean hands). As we discern no error of law or abuse of discretion by the trial court, we affirm on the basis of the trial court's opinion, which we adopt in its entirety as dispositive of the Estate of William J. Stacey's appeal. *See id*. at 1-13.

In the event of further proceedings, the parties shall attach a copy of the trial court's August 7, 2023 opinion to all future filings.

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/23/2024

OPFLD-Weinstein Etal Vs Stacey



21020110700088

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL DIVISION

2023 AUG -7 AM 10: 07
FILED
JUDICIAL RECORDS 1st JUDICIAL DISTRICT PA

KENNETH WEINSTEIN, administrator :
of the Estate of Richard A. Arbach, :
deceased et al. :
                              :
v.                       :
                                :
THOMAS STACEY, administrator of the :
Estate of William J. Stacey, deceased    :    No. 210201107

## OPINION

### JACQUINTO, J.

Pursuant to Pa. R.A.P. 1925(b), the Trial Court hereby responds to the Concise Statement

of Matters Complained Upon Appeal filed by Thomas Stacey, administrator if the Estate of

William J. Stacey, deceased ("Appellant"). Appellant is appealing the Trial Court's judgment

entered on the docket on June 22, 2023 regarding the Trial Court's Order dated April 6, 2023,

which after a non-jury trial, the Trial Court quieted title in favor of Appellant and Karen Barats,

executrix of the Estate of Richard H. Arbach, finding that both estates have a one-half undivided

interest in the real property located at 2604 Collins Street, Philadelphia, PA ("Property").

Kenneth Weinstein, administrator of the Estate of Richard A. Arbach, deceased, was also a

plaintiff in the case before the Trial Court. (individually as "Appellee Weinstein" and "Appellee

Barats" or collectively "Appellees"). It is respectfully suggested that the judgment entered on the

docket on June 22, 2023, regarding the Trial Court's Order dated April 6, 2023, be affirmed.

### PROCEDURAL AND FACTUAL HISTORY

On February 11, 2021, this case commenced when Appellees filed a complaint in quiet

title against William J. Stacey ("Stacey"). The complaint alleged that on or around June 20,

2019, William J. Stacey recorded a fraudulent deed, transferring title in the Property from

1

Richard H. Arbach ("Richard H") and Richard A. Arbach ("Richard A") to himself. The alleged fraudulent deed was executed and notarized on December 6, 2018, which was sixteen and twenty-one years after the deaths of Richard H and Richard A, respectively. Appellees filed an amended complaint on December 17, 2021 to reflect the death of Stacey, making Appellant the proper party. On January 19, 2022, Appellant filed an answer to the complaint, alleging that Richard H and Richard A sold Stacey the Property in 1993. Appellant further alleged in his answer that Stacey made multiple improvements to the Property and lived at the Property until his death on May 13, 2020. Appellant also made a counterclaim sounding in adverse possession against the Appellees. On February 3, 2022, Appellees responded to Appellant's counterclaim and asserted the defense of unclean hands amongst others.

On March 31, 2023, a nonjury trial was held. After opening arguments, Appellee Barats testified that she was familiar with Richard H and Richard A, her grandfather and uncle, respectively. (N.T. 03/31/23, 16). She also testified that she was familiar with a transfer of the Property in 1992 between the Estate of Elwood C. Arbach, her uncle, and Richard H and Richard A. (N.T. 03/31/23, 17). Appellee Barats was then presented with the death certificates of her grandfather and uncle, reflecting death dates of September 29, 2002 and April 5, 1997, respectively. (N.T. 03/31/23, 18-19). She was then presented with a deed recorded on June 20, 2019 and executed on December 6, 2018 by Richard H and Richard A, as grantors, and Stacey, as grantee. (N.T. 03/31/23, 20). She testified that at that time, that her grandfather and uncle were deceased. (N.T. 03/31/23, 21).

On cross-examination, Appellee Barats testified that she did not recall ever visiting the Property in 1993 nor recall the Property's condition in 1993. (N.T. 03/31/23, 23). She further testified that her grandfather and uncle owned a lot of real estate. Id. She was then shown a

2

document ("1993 Contract") that showed the name "Richard Arbach" at the top of the document along with an address of 640 Avenue C, Trevose, PA 19047. (N.T. 03/31/23, 30). Appellant's counsel asked Appellee Barats if Mr. Arbach had a place of business at 640 or 642 Avenue C in Trevose in 1993 and she testified that those addresses were where his home and business were located. (N.T. 03/31/23, 31). She further clarified that such was Richard H's house. Id.

On re-direct examination, she testified that she handled the sale of Richard H's property located at 642 Avenue C after his death. (N.T. 03/31/23, 35). Appellee Barats was also presented with a signed and notarized copy of Richard H's will. (N.T. 03/31/23, 36).

On re-cross examination, when asked if her grandfather had his business at 640 and resided at 642, she responded that she always remembered her grandmother being at 642. (N.T. 03/31/23, 40). Appellees then rested and moved their exhibits into evidence. (N.T. 03/31/23, 40). Following Appellees resting their case, the deed recorded on June 20, 2019 that transferred title to Stacey from Richard H and Richard A, was stricken by agreement of counsel. (N.T. 03/31/23, 41-43).

Firstly, Appellant's counsel called George Baker ("Baker") to testify. (N.T. 03/31/23, 43). Baker testified that he is an attorney who works for GRB Law and GRB Law represents the City of Philadelphia for collections related to real estate taxes and other receivables. (N.T. 03/31/23, 44). Baker was presented with an owner-occupied payment agreement ("OOPA") between Stacey and the City of Philadelphia. (N.T. 03/31/23, 45-46). Baker testified that a copy of the 1993 Contract was submitted along with the OOPA and that the name Richard Arbach was at the top of the 1993 Contract and the listed owner of the Property in the OOPA was Richard Arbach. (N.T. 03/31/23, 47). Baker testified that on April 18, 2016, Stacey signed the OOPA and on April 22, 2016, an employee of GRB Law signed the OOPA. (N.T. 03/31/23, 49). Baker was

3

presented with Stacey's OOPA application signed March 1, 2016, and further testified the application stated that Stacey was not identified as the owner of the Property but that he purchased the Property from Richard Arbach. (N.T. 03/31/23, 51).

Next, Appellee Weinstein was called to the stand and his testimony reflected that he is an attorney who was appointed as administrator of Richard A's estate. (N.T. 03/31/23, 61). He testified his role was functionary. Id. He testified that he didn't know who lived at the Property in 1993, he never met Appellant or Stacey, and he never visited the Property between 1993 and 2020. (N.T. 03/31/23, 62-64). He testified that his role as administrator is strictly functionary, to place his name as administrator for the sake of the heirs and that very little was done beyond that. (N.T. 03/31/23, 66).

Thirdly, Appellant then called Dennis Stacey, Stacey's brother, ("Dennis") to the stand. (N.T. 03/31/23, 67). Dennis testified that during the 1990s Stacey lived on Collins Street at an address of "26-something", but "not really sure." (N.T. 03/31/23, 68). Dennis testified that "[Stacey] bought the house off a guy, paid him cash for it. I think it was a thousand bucks." (N.T. 03/31/23, 69). He further testified that him and his siblings helped Stacey with the house, which included work to the "roof, windows, heat, plumbing, and electric." (N.T. 03/31/23, 70). Dennis testified that Stacey used to work for "a guy named Arbach" and "Arbach owned some properties or something and [Stacey] used to help paint for him and different types of jobs." Id.

Lastly, Appellant then called Richard Stacey, Stacey's brother, ("Richard") to the stand. (N.T. 03/31/23, 78). Richard testified that Stacey was living on Collins Street in 1993. (N.T. 03/31/23, 79). Richard described the house as "a shell when we first got there." Id. Richard testified that they made repairs to the bathroom, kitchen, basement, and the Property's windows. Id. Richard testified that Stacey lived there from 1993 to 2020. (N.T. 03/31/23, 81). He also

4

testified that he did not know a Richard Arbach, but he knew Stacey worked for "a guy that he used to do construction for, painting and remodeling, home remodeling." Id. After Richard stepped down, the Defendant rested and submitted his exhibits into evidence. (N.T. 03/31/23, 84). Plaintiff then moved in his additional exhibits. (N.T. 03/31/23, 84). Counsel for each party made their closing arguments and then the trial concluded.

## ARGUMENT

Appellant's first and second claims on appeal challenge the sufficiency and the weight of the evidence, therefore,

> "[an appellate court's] review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. [An appellate court] must grant the [trial] court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the [trial] court's findings are unsupported by competent evidence or the [trial] court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion."

Hollock v. Erie Ins. Exch., 842 A.2d 409, 413–14 (Pa. Super. 2004) (internal citations omitted) (internal quotations omitted).

> "When [an appellate court] reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. In a non-jury trial, the factfinder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations. Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder. The test is not whether this Court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion. Additionally, this Court has stated that we will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence."

5

Gutteridge v. J3 Energy Grp., Inc.,165 A.3d 908, 914-16 (Pa. Super. 2017) (internal citations omitted) (internal quotations omitted). Furthermore, Appellant's claims on appeal stem from a non-jury trial, which heard a matter sounding in quiet title. In reviewing an action to quiet title, "an appellate court's review is limited to determining whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion." Regions Mortg., Inc. v. Muthler, 889 A.2d 39, 41 (Pa. Super. 2005).

Regarding concurrent ownership of real property, specifically tenancy in common, the Supreme Court of the United States has stated, "[t]he tenancy in common is now the most common form of concurrent ownership. The common law characterized tenants in common as each owning a separate fractional share in undivided property. Tenants in common may each unilaterally alienate their shares through sale or gift or place encumbrances upon these shares. They also have the power to pass these shares to their heirs upon death." United States v. Craft, 535 U.S. 274, 279–80 (2002) (internal citations omitted). "A tenancy in common is an estate in which there is a unity of possession but separate and distinct titles. . . Thus, a tenant in common may, without the consent of his cotenant, sell, convey or dispose of his undivided interest in the property." Werner v. Quality Serv. Oil Co., 486 A.2d 1009, 1012 (Pa. Super. 1984) (internal citations omitted). "[A] tenant in common may not unilaterally bind his co-tenants to an agreement concerning the use, control, or title to the joint property." Wagman v. Carmel, 601 F. Supp. 1012, 1015 (E.D. Pa. 1985); See McKinley v. Peters, 111 Pa. 283, 3 A. 27 (1885). "[T]here is a presumption that a conveyance or devise to two or more persons, not husband or wife or trustees, carries with it no right of survivorship unless clearly expressed." Margarite v. Ewald, 381 A.2d 480, 482 (Pa. Super. 1977). Under Pennsylvania law, "unless the terms of the

6

agreement expressly or by necessary implication call for a joint tenancy, a tenancy in common will be presumed." Id. Furthermore, "[S]pecific intent of survivorship is required to create a joint tenancy, otherwise the interest is presumed to be a tenancy in common." Gen. Credit Co. v. Cleck, 609 A.2d 553, 556 (Pa. Super. 1992).

Here, the evidence presented at trial showed that Richard H and Richard A owned the Property as tenants in common. On October 30, 1992, Edward J. Walsh, executor of the Estate of Ellwood C. Arbach, deceased, deeded the property located at 2604 Collins Street, Philadelphia, PA 19125 ("Property") to Richard A and Richard H. (hereinafter referred to as "1992 Deed") (see copy of 1992 Deed admitted at trial as Plaintiff's Exhibit 1.) Nowhere within the 1992 Deed are express words of survivorship or any other indication that the Property was deeded to Richard H and Richard A as joint tenants. Therefore, with there being no specific intent to create a joint tenancy within the 1992 Deed, Richard A and Richard H concurrently owned the Property in fee as tenants in common.

In Pennsylvania the Statute of Frauds is codified at 33 P.S. § 1 and reads as follows:

> "From and after April 10, 1772, all leases, estates, interests of freehold or term of years, or any uncertain interest of, in, or out of any messuages, manors, lands, tenements or hereditaments, made or created by livery and seisin only, or by parol, and not put in writing, and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates, or any former law or usage to the contrary notwithstanding; except, nevertheless, all leases not exceeding the term of three years from the making thereof; and moreover, that no leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law."

7

"The Statute of Frauds requires 'a memorandum in writing signed by the parties to be charged which sufficiently indicates the terms of the contract and the property to be conveyed.'" In re 400 Walnut Assocs., L.P., 506 B.R. 645, 654 (Bankr. E.D. Pa. 2014) (quoting Brown v. Hahn, 213 A.2d 342, 347 (1965)). An exception to the Statute of Frauds is "when a purchaser of property has taken possession and made improvements, his case is not within the Statute, because the fact of possession is sufficient evidence that the parties intended to create the estate claimed by the purchaser." United States v. 29.16 Acres, More or Less Valley Forge Nat. Hist. Park, 496 F. Supp. 924, 929 (E.D. Pa. 1980) E. g., Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co., 407 Pa. 230, 180 A.2d 1 (1962).

In the instant matter, the Trial Court determined that the credible evidence presented at trial showed that Richard A and Stacey entered into an enforceable agreement of the Property. The testimony at trial established that: Richard H and Richard A owned many properties, Stacey at one time was an employee of the Arbachs, Richard H resided at 642 Avenue C in Trevose, PA, and the business he shared with Richard A was located at 640 Avenue C in Trevose, PA. Appellant provided witness testimony that Stacey had purchased the Property for one thousand dollars ($1,000) and lived at the Property from 1993 to the time he died in 2020. Appellant's witnesses' testimony provided that improvements were made to the Property after Stacey purchased the Property. Other relevant evidence that was considered was the written contract on February 2, 1993, with Stacey for the sale of the Property in the amount of one thousand dollars ($1,000.00). (hereinafter referred to as "1993 Contract") and the Last Will and Testament of Richard H. After reviewing the evidence, the Trial Court determined that Richard A. Arbach entered into the 1993 Contract, with William Stacey for the sale of the Property in the amount of

one thousand dollars ($1,000.00). (see copy of 1993 Contract entered into evidence at trial as Defendant's Exhibit 1.)

The agreement between Richard A and Stacey complies with the Statute of Frauds as it is in writing, signed by Richard A, and includes the parties to the contract, the price, and the Property. In the event that it is determined the 1993 Contract is unenforceable due to a violation of the Statute of Frauds, the agreement for the sale of the Property is nevertheless enforceable as the exception detailed above is satisfied because Stacey took possession of the Property and made improvements to the Property. Richard A, as a tenant in common with Richard H in regard to the Property, was able to convey his interest in the Property because as previously mentioned, "a tenant in common may, without the consent of his cotenant, sell, convey or dispose of his undivided interest in the property." See Werner at 1009, 1012. As discussed above, a tenant in common cannot unilaterally bind his cotenants to an agreement concerning the use, control, or title to the joint property. See Wagman at 1012, 1015; See McKinley, at 111 Pa. 283, 3 A. 27. Therefore, when Richard A conveyed his interest to Stacey in 1993, such a conveyance did not unilaterally bind Richard H's title/ownership interest in the Property, as the two owned the Property as tenants in common. Therefore, Richard A conveyed his interest in the Property to Stacey, and at that moment in time, William Stacey and Richard H owned the Property as tenants in common.

Pursuant to Pennsylvania law, when there exists a last will and testament, "in the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules: A will shall be construed to apply to all property which the testator owned at his death…" 20 Pa. Stat. and Cons. Stat. Ann. § 2514(1.1). Pursuant to Pennsylvania law, when a person dies intestate, "legal title to all real estate of a decedent shall

9

pass at his death to his heirs or devisees, subject, however, to all the powers granted to the personal representative by this title and lawfully by the will and to all orders of the court." 20 Pa. Stat. and Cons. Stat. Ann. § 301.

Here, the evidence presented at trial showed that Richard H died on September 29, 2002 (see copy of Richard H. Arbach's death certificate marked at trial as Plaintiff's Exhibit 3.) According to Richard H's Last Will and Testament, all his real property was bequeathed to three individuals. (hereinafter referred to as "Will") (see copy of Richard H. Arbach's Will entered at trial as Plaintiff's Exhibit 6). As previously discussed, after the 1993 Contract, Stacey and Richard H owned the Property as tenants in common. Once Richard H died testate in 2002, his legal title as a tenant in common of the Property became subject to the provisions of his Will. Upon Richard H's death in 2002, the Property was owned by William Stacey and the Estate of Richard H. Arbach, as tenants in common. Appellant's Answer pled that Stacey died on May 13, 2020, and Appellant had witnesses testify that Stacey died two to two-and-a-half years before the trial. With Stacey dying intestate, his legal title as a tenant in common of the Property became subject to Pennsylvania's intestacy laws. Stacey's undivided interest in the Property became a part of his intestate estate and passed to his heirs or devisees pursuant to Pennsylvania law. Therefore, upon Stacey dying intestate in 2020, the Property was owned by the estates of both William Stacey and Richard H. Arbach.

Therefore, after due consideration of the credible testimony and credible evidence presented by each party, there existed sufficient competent evidence for the Trial Court to determine the ownership of the Property in favor of both estates. The Trial Court did not commit any error in the application of law nor manifestly abused its discretion. It is respectfully

10

suggested that the judgment entered on the docket on June 22, 2023, regarding the Trial Court's Order dated April 6, 2023, be affirmed.

Appellant's third claim states that the Trial Court committed error of law in finding that the Estate of Richard H has a one-half undivided interest in the Property because the uncontroverted evidence shows that Appellant acquired the Property by adverse possession. Appellant's fourth claim states that the Trial Court committed error of law in not finding Appellant owned the entire Property via adverse possession. These claims fail because the uncontroverted evidence shows that Appellant engaged in fraudulent and improper conduct by executing and recording a fraudulent deed conveying title to the Property to himself.

Pursuant to the Pennsylvania Rules of Civil Procedure, all affirmative defenses shall be raised in a responsive pleading in the New Matter. Pa. R.C.P. 1030. Under Pennsylvania law, "a party seeking equitable relief. . . must come before the court with clean hands." Mudd v. Nosker Lumber, Inc., 662 A.2d 660, 663 (Pa. Super. 1995). "One guilty of wrongdoing should be denied access to the court." Id. The doctrine of unclean hands "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with iniquity or bad faith relative to the matter in which he seeks relief." Lucey v. W.C.A.B. (Vy-Cal Plastics PMA Grp.), 732 A.2d 1201, 1204 (1999). "This doctrine is rooted in the historical concept of a court of equity as a vehicle for affirmatively enforcing the requirement of conscience and good faith. Thus, while equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue." Id. "The equitable doctrine of "unclean hands," to be raised as a defense, requires that the plaintiff's allegedly improper conduct affect the equitable relations between the parties and be directly

11

connected with the matter in controversy." <u>Young v. Cerone</u>, 487 A.2d 965, 969 (Pa. Super. 1985).

Here, Appellee raised the affirmative defense of unclean hands in her response to the Appellant's counterclaim that raised a claim sounding in adverse possession. The doctrine of unclean hands prevents Appellant from acquiring title via adverse possession. Appellant made claims against the Appellees in his counterclaim, alleging he acquired title to the Property via adverse possession. Appellees responded by raising the affirmative defense of unclean hands in their response to the counterclaim. Evidence at trial shows that Stacey fraudulently recorded a deed on June 20, 2019 and such was fraudulently executed on December 6, 2018 by Richard H and Richard A, as grantors, and Stacey, as grantee. (N.T. 03/31/23, 20). The evidence reflects that at the time Richard H and Richard A signed the deed giving title to Stacey, they were both deceased due to them dying on September 29, 2002 and April 5, 1997, respectively. (N.T. 03/31/23, 18-19). Both counsel even agreed to strike the deed. (N.T. 03/31/23, 41-43). Based on that evidence, the Appellant came to court with unclean hands and sought the Trial Court to rule in its favor as being the owner of the Property. Stacey fraudulently executed and recorded a deed conveying title to the Property to himself. This fraudulent and improper conduct directly affects the ownership rights of the Estate of Richard H, as he concurrently owned the Property with Stacey at the time of the conveyance as tenants in common, which was discussed above. This fraudulent and improper conduct goes directly to the matter in controversy, which is ascertaining which party holds title to the Property. Therefore, the uncontroverted evidence presented at trial shows that Appellant is barred from receiving title to the Property via adverse possession due to the doctrine of unclean hands.

## CONCLUSION

Based on the forgoing, it is respectfully suggested that the judgment entered on the docket on June 22, 2023, regarding the Trial Court's Order dated April 6, 2023, be affirmed.

BY THE COURT:

_____
CARMELLA JACQUINTO, J.

13

## CERTIFICATE OF SERVICE

I, Todd Marvin, Jr., Law Clerk to the Honorable Carmella Jacquinto, hereby certify that on the 7th day of Aug , 2023, by first-class mail, a true and correct copy of the attached opinion was served upon the following:

JOSEPH P. KERRIGAN, ESQ.

461 N. 3RD STREET, SUITE 2B

PHILADELPHIA PA 19123


DAVID H DENENBERG, ESQ.

1315 WALNUT STREET, SUITE 500

PHILADELPHIA PA 19107